Clarence L. **DIGGS**, Plaintiff,

v.

Billie C. **HOOD**, et al., Defendants-Third Party Plaintiffs-Appellants,

v.

**FORD MOTOR COMPANY,** Defendant-Third Party Defendant-Appellee.

No. 84–4809.

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1985.

⬅6

Richard C. Meaux, Lafayette, La., for defendants-third party plaintiffs-appellants.

McGlinchey, Stafford, Mintz, Celline & Lang, C.C. Norwood, Ernest P. Gieger, Jr., New Orleans, La., for defendants-third party defendant-appellee.

Before RUBIN and REAVLEY, Circuit Judges, and SEAR *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

The issue before us is whether, under Louisiana law, one of two joint tortfeasors who compromises the claim against him and receives a release in which the injured plaintiff reserves his rights against the nonsettling tortfeasor has a cause of action against that joint tortfeasor on the basis of contribution, indemnity, subrogation, or unjust enrichment. We conclude that, under Louisiana's code articles relative to comparative negligence, a judgment against the unreleased tortfeasor would be reduced in proportion to the fault attributed to the released tortfeasor and, to that extent, the unreleased tortfeasor benefits by the settlement. Because, however, the amount of the reduction would be the dollar amount represented by the released tortfeasor's percentage of fault, the unreleased tortfeasor would realize no reduction in the amount of its net liability. In effect, the released tortfeasor has paid none of the joint obligor's debt, and hence has no claim for contribution. Holding that in this situation the released tortfeasor also has no claim for indemnity, subrogation, or unjust enrichment, we affirm the district court judgment dismissing the released tortfeasor's claims.

### I.

A Ford Mercury, driven by Clarence Diggs, was struck from the rear by an eighteen-wheel combination truck trailer driven by Billie Hood. Diggs was thrown from the Ford and sustained serious injuries including paralysis from the waist down. Diggs sued Hood, the owner of Hood's truck, and their insurers. The Hood interests filed a third party action against Ford Motor Company, seeking contribution and indemnity. Diggs then amended his complaint to add Ford as a defendant, contending that his injuries were aggravated by a defect in the seat and other parts of the vehicle. Thereafter, the Hood interests paid Diggs $1 million to compromise his claims against them. The parties to the compromise signed a release in which each of them reserved "any and all claims" they might have against Ford. Thereafter, the district court granted Ford's motion for summary judgment dismissing the third party claims against it. The summary judgment was made final

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

and appeal was taken pursuant to 28 U.S.C. § 1291 (1982).

## II.

Under Louisiana law, joint tortfeasors are liable in solido to a person whom they injure, and their victim may, therefore, recover the entire amount of his injury from any one of them.[1] If the separate acts of two persons cause consecutive injuries to another and the harm caused by each cannot be determined, the two are considered joint tortfeasors and each is liable for the entire harm.[2] A joint tortfeasor may enforce contribution or indemnity from another joint debtor by making him a third party defendant in the suit.[3]

## III.

Indemnity is due when fairness requires that one person bear the total responsibility for an injury. The basis for indemnity in the civil law, as in the common law, is restitution, the indemnitor having been unjustly enriched when the person seeking indemnity has discharged liability that was his responsibility. A solidary debtor who pays a debt that "concern[s] only" a co-debtor is, therefore, entitled to indemnity from the debtor in whose behalf the debt arose.[4] Thus a person who is held liable vicariously or passively for the tort of another is due indemnity from the culpable tortfeasor.[5] One who is himself at fault, however, is not due indemnity because liability for indemnity exists only when the party seeking indemnity, the in-

demnitee, is free of fault and has discharged a debt that should be paid wholly by the indemnitor. The Louisiana Supreme Court has summed up the principle this way: indemnity shifts the entire loss from a tortfeasor only technically or constructively at fault to the person primarily responsible, while contribution apportions the loss among those jointly responsible.[6]

The Hood interests are, therefore, not entitled to indemnity from Ford, for neither Diggs nor they contend that Ford is responsible for the collision, which certainly caused at least some of Diggs' injuries. Ford could not, therefore, be solely liable to Diggs. If Ford's liability is established, Ford owes damages only because the defects in the vehicle it manufactured aggravated the injuries Diggs would otherwise have suffered.

Louisiana courts have also recognized an action for unjustified enrichment based on quasi-contractual principles through the "procedural vehicle evolved by French jurisprudence, the action *de in rem verso*."[7] To successfully invoke the doctrine, five prerequisites must be satisfied: (1) the defendant must receive an "enrichment"; (2) the plaintiff must sustain an "impoverishment"; (3) the enrichment and impoverishment must be connected; (4) no legal cause must justify the enrichment; and (5) the plaintiff must have no other legal remedy practically available and the impoverishment must not have been able to be reasonably avoided.[8] These are not sat-

---

1. *Quatray v. Wicker,* 178 La. 289, 151 So. 208 (1933). Louisiana Civil Code article 2324 provides that joint tortfeasors are solidarily liable, with the proviso that a defendant whose fault is less than the plaintiff's owes only his percentage of the plaintiff's damages (as determined by his percentage of total fault).

2. *See Johnson v. Ford Motor Co.,* 707 F.2d 189, 191–92 (5th Cir.1983) (discussing Louisiana tort law) and cases cited therein; Restatement (Second) of Torts § 879 (1979).

3. *See* La.Civ.Code art. 2103.

4. La.Civ.Code art. 2106. *See Truxillo v. Gentilly Medical Bldg., Inc.,* 225 So.2d 488, 495 (La.App. 4th Cir.1969).

5. *Robinson v. La. Dep't of Transp. and Dev.,* 454 So.2d 257, 265 (La.App. 1st Cir.), *writ denied,* 458 So.2d 122 (La.1984). Restatement (Second) of Torts § 886B Comment C (1979).

6. *Green v. TACA Int'l Airlines,* 304 So.2d 357, 359 (La.1974).

7. Tate, The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process, 51 Tul.L. Rev. 446, 446 (1977).

8. *Minyard v. Curtis Products, Inc.,* 251 La. 624, 205 So.2d 422, 432 (1968). *See also* Tate, *supra* note 7, at 447.

isfied here, because, for the reasons set forth in Part V of this opinion, Ford has not sustained any enrichment as a result of the settlement by the Hood interests.[9] Insofar as the summary judgment dismissed the claim for indemnity, therefore, it is correct whatever theory the claim is based on.

## IV.

 The subrogation claim fares no better. Louisiana recognizes both conventional[10] and legal subrogation. The Hood interests have not been subrogated conventionally to all or any part of Diggs' claim against Ford; indeed Diggs has expressly reserved that claim. Civil Code article 2161 limits legal subrogation to specific circumstances, only one of which is arguably applicable here: "For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it."[11] Although Louisiana may recognize partial legal subrogation,[12] partial subrogation cannot be obtained here for the reasons set forth in Part V of this opinion.

## V.

 The Hood interests may claim contribution from Ford only if their payment to Diggs may in some way discharge part of Ford's potential liability. This turns on whether and to what extent Diggs' recovery from Ford may be affected by the fact and the amount of the settlement with the Hood group. Contribution may be demanded only by one who has paid the "part or portion" of an obligation for which another is liable.[13]

 It would be a needless digression to discuss the principles that would have been applicable when Louisiana's negligence law included the rule of contributory negligence, for profound changes were made when Louisiana adopted comparative negligence in 1979.[14] Louisiana has removed the bar to the recovery of damages by a plaintiff found to be contributorily negligent, and instead reduces his recovery in proportion to the degree of negligence attributable to him.[15] While each of several joint tortfeasors remains liable for the entire amount due the injured party,[16] comparative negligence applies not only to the relative fault of the injured person and the defendant, but extends also to the assessment of relative fault among tortfeasors. Under the earlier rule, joint tortfeasors were each liable for their virile, that is per capita, share of the debt, but Civil Code article 2103 now provides, "[i]f the obligation arises from an offense or quasi-of-

9. See Edmonston v. A-Second Mortgage Co., 289 So.2d 116 (La.1974); V & S Planting Co. v. Red River Waterway Comm'n, 472 So.2d 331 (La. App. 3d Cir.1985). See also Tate, The Louisiana Action for Unjustified Enrichment, 50 Tul.L. Rev. 883 (1976).

10. So far as is relevant here, Louisiana Civil Code article 2160 provides
The subrogation is conventional:
1. When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment.

11. La.Civ.Code art. 2161(3).

12. See Cox v. W.M. Heroman & Co., Inc., 298 So.2d 848, 856 (La.1974). We do not consider whether legal subrogation can be expressly or impliedly negated by contract.

13. La.Civ.Code art. 2104. This was replaced by new article 1804, effective January 1, 1985. The new article states explicitly what article 2104 left to inference. While not directly applicable to the event sued on, the drafters of the new article state that the new text merely restates, and does not change, prior law. See Revision of Book III, Titles III and IV of the Louisiana Civil Code at 146, § 1804 comment (a) (Special Pamphlet by the Louisiana Law Institute).

14. 1979 La.Acts, No. 431.

15. La.Civ.Code art. 2323.

16. Chamallas, Comparative Fault and Multiple Party Litigation in Louisiana: A Sampling of the Problems, 40 La.L.Rev. 373, 374–75 (1980). Note, however, that a joint tortfeasor shall not be liable for more than his share to a judgment creditor to whom a greater degree of negligence has been attributed. See supra note 1.

fense [a tort] it shall be divided in proportion to each debtor's fault." [17]

To provide a means to apportion fault among all of the responsible parties, the Comparative Negligence Act [18] also amended the Louisiana Code of Civil Procedure. The amended article requires the court to submit to the jury special written questions inquiring, *inter alia*, not only whether the party from whom damages are claimed was at fault and the degree of his fault, but also, "whether another involved person, other than the person suffering injury, death or loss, was at fault, and, if so: (a) whether such fault was a proximate cause of the damages, and, if so: (b) the degree of such negligence, expressed in percentage." [19] In nonjury cases, the court must, upon request, give specific answers to the same questions. [20]

The codal provisions do not address the effect of the settlement of a claim against one joint tortfeasor on the liability of an unreleased joint debtor. When an injured party compromises his claim against and releases one of the joint tortfeasors, two potential claims for contribution remain: (1) the nonsettling tortfeasor later cast in judgment may seek contribution from the settling tortfeasor; and (2) the settling tortfeasor may seek contribution for the settlement amount in excess of his share of liability from the nonsettling tortfeasor.

The Louisiana courts have upheld the settlement's preclusive effect on a nonsettling tortfeasor's claim for contribution from a released tortfeasor. The nonsettling tortfeasor may not demand contribution from the released tortfeasor as reimbursement for part of the amount the nonsettling tortfeasor is required to pay. [21] The settlement is "final, not only between the plaintiff and the settling tortfeasor; it also [operates] to preclude the nonsettling tortfeasor(s) from subsequently claiming contribution from the released persons." [22] As a corollary, the plaintiff is entitled to recover only a reduced amount from the nonsettling tortfeasor, the judgment minus the share that would have been due from the released tortfeasor. [23] Louisiana thus adopts the result that would be reached under the Uniform Comparative Fault Act, [24] which provides an authoritative guide even though the state has not adopted all of the provisions of the Uniform Act. [25]

The Louisiana courts, however, have not addressed the corollary question whether the settling defendant has a claim for contribution. Under Louisiana Code of Civil Procedure article 1812 and Civil Code

**17.** La.Civ.Code art. 2103; *see also,* Chamallas *supra* note 16, at 374–75.

**18.** 1979 La.Acts, No. 431, § 2.

**19.** La.Code Civ.P. art. 1812. Absent waiver by all parties, a Louisiana court is required to submit to the jury written questions to determine the percentages of fault of all involved persons, even nonparties. *Lemire v. New Orleans Pub. Serv., Inc.,* 458 So.2d 1308, 1311 (La. 1984).

**20.** La.Code Civ.P. art. 1917.

**21.** *Garrett v. Safeco Ins. Co.,* 433 So.2d 209, 210 (La.App. 2d Cir.1983).

**22.** Chamallas, *supra* note 16, at 393.

**23.** *Efferson v. La. Dep't of Transp. and Dev.,* 463 So.2d 1342, 1353 (La.App. 1st Cir.1984), *writ denied,* 465 So.2d 722 (La.1985); *Garrett,* 433 So.2d at 210. *See also* Robertson, Ruminations on Comparative Fault, Duty-Risk Analysis, Affirmative Defenses, and Defensive Doctrines in Negligence and Strict Liability in Louisiana, 44 La.L.Rev. 1341, 1345 (1984), cited in *Watson v. State Farm Fire and Casualty Ins. Co.,* 469 So.2d 967, 971 n. 9 (La.1985).

This alters only slightly the rule expressed in *Harvey v. Travelers Ins. Co.,* 163 So.2d 915 (La. App. 3d Cir.1964) which prevailed in Louisiana prior to the state's adoption of comparative negligence. Before 1980, the judgment in favor of a plaintiff who had settled with one of several joint tortfeasors was reduced according to the settling tortfeasor's virile, that is ratable, share, rather than according to his percentage of fault as now adopted.

**24.** Uniform Comparative Fault Act § 6 (as revised in 1979).

**25.** The Louisiana Supreme Court has looked to the Uniform Comparative Fault Act for guidance. *See Watson v. State Farm Fire and Casualty Ins. Co.,* 469 So.2d 967, 973–74 and n. 16 (La.1985).

article 2103, the nonsettling tortfeasor's liability is reduced only by the share that would have been due by the settling tortfeasor had he not been released.[26] The remaining tortfeasor, therefore, can be held liable for no more, and for no less, than his own share of the judgment. While in theory each joint tortfeasor is potentially liable for all of the plaintiff's damages, the effect of the settlement is to reduce the actual exposure of the nonsettling tortfeasor to that part of the damages his fault is found to have caused. He remains liable, however, for the full amount of damage his own negligence occasioned. No part of what has already been paid in settlement accrues to his benefit. Consequently, the settling tortfeasor has no claim for contribution because his payment does not discharge any part of the debt due by the other tortfeasor.

In admiralty, the doctrine of comparative fault was established long before Louisiana adopted it. The result we reach is consistent with our maritime law decision in *Leger v. Drilling Well Control, Inc.*[27] in which we declined to require contribution. The judgment against the nonsettling defendant would be credited with the dollar amount represented by the proportion of negligence attributed to the settling tortfeasor.

The decision we reach is also in accordance with the views of several scholars of Louisiana tort law.[28] Moreover, it makes the compromise a final adjustment of rights of the released tortfeasor. While an injured party may recover more than his total damages, this is not a double recovery, for it simply places on the plaintiff both the risk of undervaluing his claim against the settling defendant and the benefits of favorable negotiation.[29]

---

**26.** *See* cases cited in note 23, *supra.*

**27.** 592 F.2d 1246 (5th Cir.1979). For a critique and endorsement of *Leger,* see Staring, Meting Out Misfortune: How the Courts are Allotting the Costs of Maritime Injury in the Eighties, 45 La.L.Rev. 907, 923–25 (1985).

## VI.

Let us illustrate the operation of the principles we have discussed, remembering that the Hood interests paid $1 million for their release:

(a) After trial, the jury determines that Diggs' damages amount to $3,000,-000. The jury decides that Ford's fault is 50% and Hood's is 50%. The amount of the judgment collectible from Ford is reduced by 50% because Diggs is considered to have collected half of what he is due by accepting the compromise. Diggs, therefore, is permitted to collect $1,500,000 from Ford. Diggs will receive a total of $2,500,000, not $3,000,000, sustaining a "loss" of $500,000 because he has settled his claim against Hood for less than it was worth. Hood is not entitled to contribution from Ford because Hood has paid no part of the amount for which Ford is liable. Ford would have owed $1,500,000 had the Hood interests not compromised with Diggs; it still owes $1,500,000.

(b) The jury determines that Diggs' damages amount to $1,500,000. It allocates fault 50% to Ford, 50% to Hood. The judgment is reduced by 50%. Diggs collects $750,000 from Ford but retains the $1,000,000 received from Hood. Diggs receives a total of $1,750,000, even though the total judgment value of his claim is only $1,500,000, because he has made a favorable settlement with the Hood interests. The Hood interests are not entitled to contribution from Ford because no part of what Hood paid Diggs in settlement accrued to Ford's benefit.

Although, under Louisiana products liability law, Ford may be found liable with-

---

**28.** Chamallas, *supra* note 16, at 393; Malone, Effect of Settlement with One Wrongdoer, 26 La.L.Rev. 530 (1966), *reprinted in* W. Malone & L. Guerry, Studies in Louisiana Tort Law at 934 (discussing Louisiana law when the doctrine of contributory negligence applied).

**29.** *Leger,* 592 F.2d at 1250.

out being found negligent,[30] in our opinion a Louisiana court would apply comparative fault concepts to quantify the fault of a strictly liable defendant for purposes of comparison with the fault of other parties, either the plaintiff or codefendants, whether the other defendants are negligent or liable without regard to negligence.[31] This conclusion is supported by the provisions of the Uniform Comparative Fault Act to which, as we have already noted, the Louisiana Supreme Court has looked for guidance and which suggest that there is no insurmountable hurdle to quantifying the fault of a strictly liable defendant.[32] As Professor David Robertson has noted, "[f]ault is never assessed or compared in a vacuum; the causal contribution and blameworthiness of all of the parties to a tortious event provide a basis for assessment and comparison." [33]

The parties have not raised the question whether Diggs was negligent, and we do not, therefore, consider any questions that relate to the possible effect his negligence, if any, might have on his recovery.[34]

### VII.

 Apparently complex legal questions may sometimes be resolved by principles as elementary as those Sherlock Holmes postulated to "My dear Watson." The right to contribution exists only in favor of a party who has paid what someone else owes. Unless the payment discharges all or a part of the debt of the person from whom contribution is sought, there is no debt to be repaid and no liability for contribution.

For these reasons, the judgment is AFFIRMED.

---

**30.** *See, e.g., Weber v. Fidelity & Casualty Ins. Co.,* 259 La. 599, 250 So.2d 754 (1971) and its progeny.

**31.** *Bell v. Jet Wheel Blast, Div. of Ervin Indus.,* 462 So.2d 166 (La.1985) (on certification from the United States Court of Appeals for the Fifth Circuit). *See generally* Robertson, *supra* note 23, at 1354–56.

**32.** Uniform Comparative Fault Act § 1, Comment (as revised in 1979). The Louisiana Supreme Court has looked to the Uniform Comparative Fault Act for guidance. *See supra* note 25.

**33.** Robertson, *supra* note 23, at 1356.

**34.** *See Bell v. Jet Wheel Blast, Div. of Ervin Indus.,* 709 F.2d 6 (5th Cir.), on rehearing certified to the Louisiana Supreme Court, 717 F.2d 181 (5th Cir.1983), opinion of the Louisiana Supreme Court, 462 So.2d 166 (La.1985), and the Fifth Circuit's final opinion, 755 F.2d 1146 (5th Cir.1985).