**RESOLUTION TRUST CORPORATION, in its Corporate Capacity, Plaintiff,**

v.

**Warren YOUNG, John Stuckey, William Gallo, Allan A. Borghard, William Guardenier, Donald Vredenburgh, Jr. and Alexander Minella, Defendants.**

No. 93 Civ. 6531 (LMM).

United States District Court, S.D. New York.

May 2, 1996.

Elaine Jacoby, Hill Wallack, Princeton, NJ, William A. Thomas, Jr., William A. Thomas, Jr. & Associates, Elizabeth, New Jersey, for plaintiff.

Elliot Silverman, Gold & Wachtel, L.L.P., New York City, for Settling Defendant, William Guardenier.

Roger J. Bernstein, New York City, for Defendant/Cross–Claimant William Gallo.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

Plaintiff Resolution Trust Corporation ("RTC")[1] and Defendant William Guardenier seek entry of an order barring all claims which could be brought by non-settling defendants against Settling Defendant Guardenier, including, but not limited to, negligence, breach of fiduciary duty, and contribution and indemnification claims, however denominated, arising out of this matter, and dismissing with prejudice any and all claims asserted by the RTC against the Settling Defendant and by the Settling Defendant against the RTC.

The RTC and Guardenier have asked the Court to adopt New York's settlement bar

---

1. The Resolution Trust Corporation, in its corporate capacity, terminated on December 31, 1995 in accordance with the provisions of the Resolution Trust Corporation Completion Act, 12 U.S.C. § 1441a(m)(1) and (2). The assets and liabilities of the Resolution Trust Corporation, in its corporate capacity, were transferred to the Federal Deposit Insurance Corporation, which serves as manager of the FSLIC Resolution Fund, 12 U.S.C. § 1821(a)(1). Pursuant to these provisions, the Federal Deposit Insurance Corporation, as manager of the FSLIC Resolution Fund, statutorily succeeded the Resolution Trust Corporation, in its corporate capacity, in this action. (Pl. Notice of Statutory Succession and Substitution).

rule, N.Y.Gen.Oblig.Law § 15–108, which provides that, when one defendant settles, any remaining defendants are chargeable with the total verdict less the amount attributable to the settling defendant's percentage share, or the amount paid by the settling defendant, whichever is greater.

One of the non-settling Defendants, William Gallo, objects to the proposed order on several grounds. First, Gallo claims that application of New York law is not clearly warranted as it may be appropriate for the Court to apply federal law. Second, Gallo argues that even if New York law applies, § 15–108 only addresses contribution rights and does not address indemnification rights.

### I. Choice of Law

■ As a threshold matter, Defendant Gallo asserts that the Court should not determine non-settling defendants' indemnification and contribution rights because the question of whether federal or state law should apply to these issues is a complicated one and that any decision on the issue is premature. In recognition of the strong federal and state interest in promoting settlements and the role of bar orders in serving that interest, the Court finds Gallo's argument unpersuasive and the issues raised ripe for decision.

■ Defendant Gallo asserts that federal common law may apply because the RTC is a party to this action, *see* 12 U.S.C. § 1441a(1)(1) (suits to which the RTC is a party "shall be deemed to arise under the laws of the United States"). This statute is a jurisdictional statute but, in the past, some courts have found that the statute also implies that Congress intended federal law to govern actions involving the RTC. Any such presumption was limited by the Supreme Court's recent decision, *O'Melveny & Myers v. FDIC,* — U.S. —, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), in which creation of federal common law was expressly disfavored except where explicitly authorized by Congress.

In a prior decision on this case, 1995 WL 552622 (S.D.N.Y. Sept. 18, 1995), this Court dismissed several counts of this action on the ground that section 12 U.S.C. § 1821(k) of the Financial Institutions Reform, Recovery,

and Enforcement Act of 1989 ("FIRREA") establishes gross negligence as the exclusive standard of director liability, preempting causes of action predicated on a lesser degree of fault. In dismissing the claims, the Court relied on and interpreted an explicit federal statutory provision; the Court did not find that "federal common law" governed this action.

■ The Court is now asked to determine whether state or federal law should apply to determine contribution and indemnification rights resulting from § 1821(k) claims. Contribution and indemnification rights are issues left unaddressed by § 1821(k)'s statutory scheme. In *O'Melveny & Myers v. FDIC,* — U.S. —, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), the Supreme Court faced a legal issue analogous to the one before this Court. The Supreme Court addressed the question of whether, in a suit brought by the Federal Deposit Insurance Corporation as receiver of a federally insured bank, a federal-law or state-law rule of decision governed issues not specifically addressed by FIRREA. The Supreme Court held:

> In answering the central question of displacement of [state] law, we of course would not contradict an explicit federal statutory provision. Nor would we adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law. *Id.* at —, 114 S.Ct. at 2053 (citations omitted).

Thus, state law applies unless "some provision in the extensive framework of FIRREA provides otherwise. To create additional 'federal common law' exceptions is not to 'supplement' this scheme, but to alter it." *Id.* at —, 114 S.Ct. at 2054..

■ As no specific statutory provision dictates the appropriate contribution and indemnification rules to apply, a court should apply state law unless judicial creation of a special federal rule is justified by a "significant conflict between some federal policy or interest and the use of state law." *O'Melveny* at —, 114 S.Ct. at 2054 (quoting *Wallis v. Pan American Petroleum Corp.,* 384 U.S.

63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)). The fact that one party to this suit is the RTC and that the bank in question is federally chartered does not raise the kind of conflict sufficient to trigger creation of a federal rule. As noted in *O'Melveny:*

> The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred. Uniformity of law might facilitate the FDIC's nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty—but if the avoidance of those ordinary consequences qualified as an identifiable federal interest, we would be awash in "federal· common-law" rules. *O'Melveny* at ——, 114 S.Ct. at 2054 (citations omitted).

No federal interest more compelling than those unsuccessfully invoked in *O'Melveny* has been argued in the present case. Thus, state law governs the questions currently before this Court.

 Neither party argues that any state law other than New York's is applicable. Yorkville was a state chartered mutual association operating under the name Manhattan Savings and Loan Association and doing business under the laws of the State of New York. Operations under the Yorkville name began in 1955. On December 4, 1980, Yorkville accepted a federal mutual banking charter. Yorkville had its principal place of business in the Bronx, New York, and at its peak operation, maintained a network of 10 branches, located in New York City and adjoining Westchester County. The causes of action asserted arise from actions which took place within New York and which had a substantial impact in New York. For these reasons, this Court will apply New York law.

## II. The Proposed Bar Order

### A. Contribution Claims

 New York's settlement bar rule, N.Y.Gen.Oblig.Law § 15–108(b), provides that an injured party's release of one tortfea-

sor relieves the tortfeasor "from liability to any other person for contribution." New York's rule combines the *pro tanto* and comparative fault settlement rules by providing that when one defendant settles, any remaining defendants are chargeable with the total verdict less the amount attributable to the settling defendant's percentage share, or the amount paid by the settling defendant, whichever is greater. Under the New York rule,. there is no need for a fairness hearing because even if a plaintiff settles for too little, the non-settling defendant is still entitled to a credit equal to the settling defendant's proportionate share of fault. The RTC and Defendant Guardenier's motion to bar contribution claims against Guardenier by all parties to this action is granted.

### B. Indemnification Claims

 Non-settling Defendant Gallo asserts that N.Y.Gen.Oblig.Law § 15–108 does not bar claims for indemnification against settling defendants. Gallo is correct in this assertion, as noted in the commentary to 15–108:

> ... it should be emphasized that this section defines and limits only the right to contribution; it has no bearing on the right to indemnity. Thus, if under traditional principles of common law B has a right to complete indemnity from A, B may still obtain that indemnity. *See, e.g., Rogers v. Dorchester Associates,* 1973, 33 [32] N.Y.2d 553 [347 N.Y.S.2d 22, 300 N.E.2d 403]. In contribution, the liability is shared among wrongdoers who are in pari delicto. Indemnity involves shifting the entire loss from one defendant to another.

Accordingly, the Court views the request for an order barring claims against Guardenier for indemnification as a motion to dismiss with prejudice all cross-claims for indemnification against Guardenier.

 A motion to dismiss should not be granted unless, after accepting all the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the non-movant, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman,* 18 F.3d

147, 150 (2d Cir.1994) (internal quotations marks and citations omitted).

 Under New York law, a claim for indemnification arises only under an express contract of indemnification, or where one defendant is held vicariously liable for the negligence of another. As noted in *In re Del–Val Financial Corp. Sec. Litigation,* 868 F.Supp. 547, 553 (S.D.N.Y.1994):

> '[t]he right to indemnification may arise out of an express agreement of indemnification, or it may be implied by law in favor of one who is held liable solely by imputation of law because of his relation to the actual wrongdoer.' Relationships that support implied indemnification include employer/negligent employee, building owner/independent contractor, and motor vehicle owner/negligent driver.

Further explication of the type of relationship from which indemnification can be implied is stated in *Riviello v. Waldron,* 47 N.Y.2d 297, 306, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (N.Y.1979):

> The right of contribution arises among several tort-feasors who share culpability for an injury to the plaintiff and whose liability may be equitably apportioned according to fault. Indemnity, however, flows from either a contractual or other relationship between the actual wrongdoer and another, such as that of employee and employer, and involves a complete shifting of the loss. (citations omitted).

No contractual provision or relationship regarding indemnification has been alleged to exist between Guardenier and his fellow defendants. Neither have defendants alleged facts to support a finding that Guardenier is vicariously liable for the actions of his fellow defendants. Guardenier and the other defendants were on the Board of Directors of Yorkville Federal Savings and Loan Association. Each was charged with "mismanagement, negligence, gross negligence, breach of fiduciary and other duties and other wrongful and improper conduct" in relation to their roles as former officers and directors of Yorkville Federal Savings and Loan Association. All of the defendants are alleged to be primary wrongdoers. Nothing about the relationship between them supports a finding of implied indemnification. Accordingly, cross-claims asserted against Guardenier by his co-defendants for indemnification are dismissed with prejudice.

### III. Conclusion

Any and all claims asserted by the RTC against the Settling Defendant Guardenier and by Guardenier against the RTC are dismissed with prejudice and without costs or attorneys' fees. Any and all claims for contribution and indemnity, however denominated, which have been or could have been, or could be asserted against Guardenier by any party to this action or by Guardenier against any party to this action are barred or dismissed with prejudice. Any judgment that the RTC may eventually be awarded against the remaining non-settling defendants may be reduced at trial in accordance with N.Y.Gen.Oblig.Law § 15–108. Pursuant to Fed.R.Civ.P. 54(b), the Court determines that there is no just reason for delay, and the Clerk is directed to enter judgment in conformity with this Section (Conclusion) of the Memorandum and Order.

SO ORDERED.